Steven T. Waterman (4164)
Maryann Bauhs (17196)
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Waterman.Steven@Dorsey.com
Bauhs.Maryann@Dorsey.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| GREG E. LINDBERG,<br><br>Plaintiff,<br><br>vs.<br><br>AAPC HOLDINGS, LLC and AMERICAN ACADEMY HOLDINGS, LLC,<br><br>Defendants. | **REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A)**<br><br>Civil No. 2:26-cv-00881-HCN<br><br>Judge Howard C. Nielson |

The named defendants (collectively "Defendants"), respectfully submit this Reply in Support of their Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a).

## INTRODUCTION

In Opposition (the "Opp," ECF No. 8), Plaintiff places emphasis on the purported inconvenience transfer would impose upon potential witnesses (who are Defendants' principals and officers). Plaintiff fails to address the critical fact that, in this action, he seeks to enjoin a sale over which the Western District of North Carolina has jurisdiction. Moreover, Plaintiff makes no attempt to grapple with the fact that he seeks to enjoin the sale of Defendants—a Primary Restitution Asset subject to administration by the Special Master in the Western District of North

Carolina. Moreover, one of Plaintiff's claims alleges Defendants have breached the Assignment Agreement, which requires application of North Carolina law and includes a consent to venue in the Western District of North Carolina. Given the backdrop of this case, Plaintiff's preference to litigate in Utah is irrelevant, as he is not located in Utah[1]. The Western District of North Carolina is the more appropriate and convenient venue for this action.

## ARGUMENT

## I. THE COURT SHOULD TRANSFER THIS ACTION TO THE WESTERN DISTRICT OF NORTH CAROLINA

### A. This Action Could Have Been Brought in the Western District of North Carolina

Plaintiff's threshold argument rests on a false premise. He asserts that, because "[n]either Defendant is a party to [the Assignment Agreement], American Academy Holdings is not named in [the Agreement], and the indemnity claims do not arise under [the Agreement]," Defendants failed to establish that this action could have been brought in the Western District of North Carolina. Opp. at 4. But Plaintiff's conclusion does not follow: Defendant's status as a non-signatory does not preclude it from invoking the very Agreement—including its consent to venue provision—that Plaintiff seeks to enforce against it. *Id.* at 4.

Plaintiff's own allegations foreclose his position. The Complaint alleges that the Assignment Agreement assigned to the Special Master—who is in the Western District of North Carolina[2]—among other things, "the Rights and Interests in the Common Units of [Defendant]," and expressly "provides that [Defendant] is an intended third-party beneficiary of the Assignment Agreement." Compl. ¶ 15. Thus, although Defendant is not a signatory to the Agreement, Plaintiff

[1] Due to incarceration, Plaintiff cannot appear in Utah.

[2] There is no jurisdiction over the Special Master in the District of Utah.

claims [Defendant] is an "express intended third party beneficiary." *Id.* ¶ 36; *see also* Ex. B to Compl. ¶ 13. Under North Carolina law, this status carries the right to enforce the Agreement. *See Lane v. Aetna Casualty & Surety Co.*, 48 N.C. App. 634, 639–40, 269 S.E.2d 711 (1980) ("The rule is well established in this jurisdiction that a third person may sue to enforce a binding contract or promise made for his benefit even though he is a stranger both to the contract and to the consideration." (quoting *Am. Trust Co. v. Catawba Sales & Processing Co.*, 242 N.C. 370, 379, 88 S.E.2d 233 (1955))).[3] More fundamentally, Plaintiff's First Claim for Relief alleges that Defendanst breached the Assignment Agreement, and his request for declaratory relief alleges an "[a]ctual, justiciable controversy of sufficient immediacy . . . between the parties concerning their respective rights and obligations under the Assignment Agreement." Compl. ¶¶ 38–38, 46. Plaintiff cannot invoke the Agreement as the source of Defendants' alleged obligations while denying Defendants the corresponding right to invoke the Agreement's consent to venue provision. *See, e.g.*, *Snow Enter., LLC v. Bankers Ins. Co.*, 282 N.C. App. 132, 142, 870 S.E.2d 616 (2022) ("[A] party who accepts a transaction or instrument and then accepts benefits under it may be estopped to take a later position inconsistent with the prior acceptance of that same transaction or instrument." (citation modified)).

Section 1404(a) asks whether the action *could have been brought* in the transferee district—or whether the parties consented to that district—not whether Plaintiff was *required* to file the action there. 28 U.S.C. § 1404(a) ("[A] district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."). Both grounds are satisfied here. The operative facts as alleged in the

[3] The Assignment Agreement requires it to be interpreted under North Carolina law. Compl. ¶ 13; Ex. B to Compl. ¶ 5.

Complaint establish that Plaintiff could have brought this action in the Western District of North Carolina. And the consent to venue provision in the very Agreement Plaintiff alleges Defendants breached—and on which Plaintiff bases his request for injunctive relief—confirms the parties consented to that forum. Plaintiff therefore cannot defeat transfer by claiming the consent to venue clause is irrelevant because it was not mandatory and because Defendant is not a signatory thereto.

**B. The Operative Facts Weigh in Favor of Transfer**

The operative facts alleged by Plaintiff are centered in the Western District of North Carolina. Plaintiff and non-party Global Growth Holdings assigned units in Defendant to the Special Master in the Western District of North Carolina. Compl. ¶ 15. Any sale of Defendant is under the jurisdiction of the Western District of North Carolina. *See, e.g.*, Ex. E to Compl. (Order Appointing Special Master) at 6(c)–(d) (the Special Master must seek Court approval for liquidation and/or repatriation of the Primary Restitution Assets, including Defendants). Plaintiff further alleges that his claimed rights to Defendants arise from and depend on two "related" proceedings pending in that District. Compl. ¶¶ 4, 14, 21, 29–34. His demand letter—repeatedly invoked in the Complaint and foundational to his claims—likewise relies on pending motions in those "related" Federal Criminal Proceedings as the basis for demanding restrictions on refinancing and mandatory distributions. *Id.* ¶¶ 2, 23–24, 28, 34, & Ex. A thereto. Plaintiff even concedes that any relief entered here must not interfere with those proceedings. Compl. ¶ 52. These are not incidental connections to North Carolina; they are the factual and jurisdictional predicates of Plaintiff's claims. And although the contractual consent to forum clause is permissive rather than exclusive, it further confirms that the parties regarded the Western District of North Carolina as an appropriate and foreseeable forum for disputes arising from the Assignment Agreement.

Plaintiff's response avoids this central point and instead relies on considerations that do not alter the operative nexus. He argues that the Special Master is irrelevant because the Special

Master (1) said he does not "need to be in the middle of" the dispute concerning Defendants' tax obligations, (2) expects Defendants "to produce little if any restitution asset," (3) did not "ask for this case," and (4) faces a pending motion for recusal and removal. Opp. at 5–6. None of those assertions changes the dispositive fact: Plaintiff seeks to enjoin the sale of Defendants, a primary Restitution Asset subject to the Special Master's oversight and the Western District of North Carolina's jurisdiction. The Special Master's reluctance to become involved in a discrete tax-distribution dispute does not eliminate that court-ordered responsibility, nor the Special Mater's indispensability. Nor does the pending recusal motion weaken the North Carolina nexus because, if the motion is denied, the current Special Master remains responsible; if it is granted, the Western District of North Carolina must appoint a successor who will assume the same obligations under the Assignment Agreement. Either way, oversight of the asset—Defendants—and any proposed sale thereof remains anchored in that District. Plaintiff therefore cannot make North Carolina irrelevant by pointing to a potential change in the individual charged with carrying out the same court-supervised duties.

Plaintiff's remaining contention—that the pending Federal Criminal Proceedings will not "benefit from this case"—is also beside the point. Opp. at 7–8. Transfer does not turn on whether those proceedings will derive some collateral benefit; it turns on where the operative facts are concentrated and which court has the closest connection to the relief sought. Here, Plaintiff asks this Court to enjoin the sale of an asset subject to the Western District of North Carolina's jurisdiction. He expressly acknowledges that any order entered in this action "would be subject to the orders of" that court. *Id.* (quoting Compl. ¶¶ 4, 29, 52). That concession is decisive: a court whose order must defer to the Western District of North Carolina should not adjudicate a dispute where the relief requested directly affects property under that District's supervision. The operative

facts therefore require transfer.

**C. The Section 1404(a) Factors Weigh in Favor of Transfer**

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (citation modified). The nine factors articulated in *Chrysler Credit Corp.* provide the framework for that practical inquiry; they are not a mechanical checklist. *Id.* Applied to the unusual posture alleged here—where Plaintiff seeks relief affecting an asset under another District's supervision, invokes an agreement governed by North Carolina law, and claims rights dependent on proceedings pending in that District—the factors strongly favor transfer to the Western District of North Carolina.

*1. Plaintiff's Choice*

Plaintiff's choice to bring this suit in Utah should receive substantially reduced deference because Plaintiff does not reside in Utah and cannot appear in Utah. *Emplrs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010) ("The plaintiff's choice of forum receives less deference, however, if the plaintiff does not reside in the district."). Plaintiff invokes Defendants' Utah location, delivery of the demand letter in Utah, and alleged Utah-based decisions "not to pay, not to indemnify, and not to respond." Opp. at 9. But those contacts are secondary to the dispute Plaintiff actually pleaded. As explained above and in Defendant's opening brief, the requested injunction would affect an asset under the jurisdiction of the Western District of North Carolina, and Plaintiff's asserted rights arise from proceedings and an agreement centered there. Where, like here, the operative facts lie outside the chosen forum, the plaintiff's preference receives even less weight. *Emplrs Mut.*, 618 F.3d at 1168.

The substance of Plaintiff's own allegations confirms that Utah is not the center of this

dispute. Plaintiff claims rights in Defendants, North Carolina limited liability companies overseen by a Special Master appointed by the Western District of North Carolina; those asserted ownership rights are already being litigated there. Plaintiff also seeks to enjoin a sale that cannot proceed without that Court's supervision. The fact that Plaintiff directed a demand letter to Utah does not shift the dispute's factual nexus. To the contrary, the letter expressly ties Plaintiff's demand to the North Carolina proceedings: "[Defendant] is among the assets held under the supervisory structure arising from my federal proceedings in the Western District of North Carolina. . . . once these matters are fully adjudicated, . . . [Defendant] will be returned to my full ownership and control." Ex. A to Compl. at 1. Thus, Plaintiff's own words confirm that his claimed ownership and requested relief are wholly dependent on decisions of the Western District of North Carolina. Under these circumstances, his selection of Utah warrants little, if any, deference.

*2. Accessibility of Witnesses and Sources of Proof*

Plaintiff's witness-access argument is internally inconsistent. He contends that Defendants' Salt Lake City employees and officers would be beyond compulsory process in North Carolina, yet simultaneously maintains that the Special Master could be compelled to testify through a Utah subpoena. Opp. at 10. The distinction cuts the other way. Currently, the Special Master is a nonparty whose testimony may require compulsory process, while the testimony Plaintiff identifies from Defendants appears principally suited to a Rule 30(b)(6) deposition of Defendants, for which no subpoena is necessary. And if Plaintiff seeks testimony from individual employees or officers, transfer would not make that testimony unavailable: a subpoena would issue from the Western District of North Carolina, where the action would be pending, and require compliance in Utah, where the potential witness may live, work, or regularly transacts business in person. *See* Fed. R. Civ. P. 45(a)(2), (c). Transfer therefore preserves access to the Utah witnesses while placing the case in the forum with direct access to the nonparty court-appointed official whose

authority lies at the center of the requested relief.

The sources-of-proof analysis likewise does not favor Utah. Because Plaintiff is incarcerated in Georgia, depositions will be remote regardless of forum. The documents he identifies are maintained electronically and will be produced electronically; their custodial location imposes no venue-specific burden. Plaintiff's assertion that transfer would merely shift costs to Utah witnesses, Opp. at 11, overlooks the reality. To the extent physical evidence or testimony concerning the assets, the Special Master's authority, or the related Federal Criminal Proceedings becomes necessary, those sources are tied to the Western District of North Carolina. On balance, access to Defendant's electronic records undermines Plaintiff's Utah-based proof argument, while the North Carolina evidence remains connected to the court supervising the very asset at issue.

*3. Governing Law*

Plaintiff's characterization of this contract dispute as "relatively simple" does not favor Utah. *See* Opp. at 11. The point is not that this Court is incapable of applying North Carolina law. It is that North Carolina law governs the Assignment Agreement, and the Western District of North Carolina has a much greater connection to both the Agreement and the relief sought. That court must oversee any sale or transfer of Defendant, the Special Master appointed there must administer such a sale pursuant to the Assignment Agreement, and Plaintiff's claimed ownership interest depends on the resolution of motions pending there. The relief Plaintiff seeks in this case would not resolve an isolated contract dispute; it would affect property and court-supervised obligations already before the Western District of North Carolina. North Carolina's interest is direct and substantial, while Utah's is comparatively attenuated. This factor favors transfer.

*4. Other Considerations*

Most tellingly, Plaintiff does not meaningfully address the practical considerations or the interest of justice—factors that strongly favor transfer. This action is not merely related to the

Federal Criminal Proceedings in the Western District of North Carolina; Plaintiff's asserted rights and requested injunction depend on them. The same Court already supervises the asset Plaintiff seeks to prevent from being sold, controls the authority of the Special Master, and will determine issues bearing on Plaintiff's claimed ownership. Therefore, litigating this dispute in Utah would create avoidable risks of duplicative proceedings, inconsistent rulings, and an order affecting property subject to another federal court's supervision. Transfer would place the entire controversy before the court best positioned to coordinate the overlapping issues and grant effective relief. Moreover, as Defendant explained in its opening brief, the Special Master—a North Carolina resident with no connection to Utah—may be a necessary and indispensable party, over whom Utah does not have jurisdiction. The practical administration of justice thus weighs decisively in favor of transfer.

**CONCLUSION**

For the foregoing reasons and for those in Defendants' Motion to Transfer, Defendants respectfully request this Court to transfer this action to the United States District Court for the Western District of North Carolina.

DATED this 23rd day of October.

DORSEY & WHITNEY LLP

/s/ *Steven T. Waterman*
Steven T. Waterman
Maryann Bauhs
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on the 23rd day of October, 2026, I caused to be served a true and correct copy of the foregoing via email, pursuant to Plaintiff's Email Filing and Electronic Notification Form for Unrepresented Parties (ECF No. 2) on:

gelindberg@gmail.com
kholcomb@apexinternationalsas.com

/s/ *Vanessa Thompson*____________________